and enforcing the ESA not to deliver the water. And any challenge to the arbitrariness of any such decision is an APA lawsuit, which they brought and didn't pursue. After they initially looked, it appeared that they were going to be losing it. And in fact, it's some of the same parties, and there's sort of a major question of, and there's other cases as well, where there's a question of whether there's some sort of race judicata or collateral establishment too. I guess I've even gone over my 38 minutes. No, you haven't. You had, the clock started at 33 minutes, Ms. Barton, and you've used that plus three minutes and 27 seconds. So you have a little bit of time if you want to get up to 38 minutes. You don't have to use it, but it's there if you want it. Yeah, I know. Let me just see if there's anything I didn't address. That if the court doesn't have questions, and I guess I won't worry about it, but. I think I've, oh, I did want to make one other point. The water in the reservoir is not, actually, two points quickly, owned. No, water right doesn't give anybody ownership of water. It's a use of fructuary right. It's a right to use water. So the characterization of the body of water in the reservoir as anybody's water is just not accurate under the law. What they have, to the extent they have any interest in the use of water, it's the use of water. And the question is, the delivery of that water, when can it be infringed, and under what standards is any such infringement to be analyzed? And with respect to the two water permits that are at issue here, those permits are, well, first of all, they're permits, which isn't a perfected vested right, as we say in our brief. And we cite Oregon law, and the appellants do not respond to that. They do, you don't have a, a permit gives you the right to apply water to beneficial use, and then you get a certificate that says, oh, yes, now you've applied it to beneficial use. This is all under the 1909 water. And we're dealing with permits here, not certificates. And we're dealing with permits. But these, plus these permits, they don't have anything to do with the project water. They're permits independent of, this is, the United States just said, we're not gonna send the project water down. They could have taken the water out of the river. I mean, that, it's an independent right that really is not at issue in this case. And with the, I would note again, with Van Brimmer and the permits, and even the patent deeds, in their opening brief, they did not identify any error in the CFC's decision. They really have waived those claims. Okay. Thank you, Mr. Martin. I think that's it. All right, we'll, Mr. Marzulli, you have your, I guess your three minutes of rebuttal, and that should make it pretty much even for everybody. Thank you, Your Honor. And I will be as brief as possible. The linchpin to the government's property rights argument is that these deeds, although they appear to convey a water right, although they use exactly the language one would use if the United States wished to convey a water right, in fact, convey a contract right. You're talking about the patents. The patent deeds. Right. The patent deeds look like they convey a water right. The United States says, no, no, that's not really what they do. They convey a contract right. Well, first of all, normally, of course, a deed is used to convey title, and a contract document, a contract assignment is used to convey contract rights. But the more important question is, what contract rights? The United States had no right to have water delivered to it. It was the deliverer of the water. Could the United States assign someone else's rights, the Irrigation District's rights? Is that their claim? That somehow when they granted these deeds, they were actually taking rights that belonged to the Irrigation District and assigning them to the individuals? Surely that can't be the case. The United States had no such right to make such an assignment. Finally- What did they obtain under the 1905 Act, then? They obtained a water right, Your Honor, and that's what they conveyed to the plaintiffs. Finally, the coup de grace, I think, for that argument is, Mr. Robeson's deed is dated 1952. He's in the Tule Lake Irrigation District. The first contract with Tule Lake was signed in 1956. There was no contract right to assign to Mr. Robeson in 1952. The deed means what it says. It assigns the contract right. Going now to the Sovereign Act impossibility question, I think counsel did not mean to say that the injunction, I believe, Your Honor, asked the question, the injunction certainly did not extend past April 6th. It required consultation, period. That's as far as it went, and a few weeks later, it was formally dissolved. Do you think that if there were an injunction issued by a court, resisted, let's say, by the agency, that that would be sufficient to satisfy impossibility? Even if the injunction's dead wrong, even if- It probably would, Your Honor, yes. But not present here, you say? That is not this case, because the injunction only required consultation, and counsel, I think, was a little bit slippery in trying to answer your question, I didn't mean that unkindly, about what was the Sovereign Act here. To be sure, reclamation was in a difficult position. It had two choices, either run the risk of violating the Endangered Species Act by taking endangered species in the face of biological opinion, or run the risk of being sued for, if it was wrong in that decision, being sued for taking of the water rights. It made a choice. It said, I'm gonna take this risk, and I'm not gonna take the other risk. The result of that decision, by the way, which could have been resolved by exercise of its authority under Section 5 of the Endangered Species Act, to purchase land or water needed for species. Reclamation chose not to do that in 2001. And of course, they've since done that with their water act. But in 2001, they made the choice, we're just going with the fish, and we are going to deliver nothing to the farmers. Finally, I think the U.N.T.A. case speaks only to the question of whether the United States water rights were valid at all. Here, the appellants obviously don't challenge the validity of the United States water rights. In fact, their claim depends upon those water rights being valid, and therefore, they have, U.N.T.A. has no application in this case. Thank you, Mr. Marzullo. Thank you again, Ms. Barton. The case is submitted. Thank you.